Kenneth Ray CRAWFORD, Plaintiff,

v.

W. O. POWERS et al., Defendants.

Andrew J. McGEE, III and Cornelia
McGee, Plaintiffs,

v.

STATE FARM FIRE AND CASUALTY
CO., Defendant and Third-Party
Plaintiff,

v.

FIRST PROVIDENT CORPORATION et
al., Third-Party Defendants.

Civ. A. Nos. 73–235, 73–332.

United States District Court,
D. South Carolina,
Florence Division.

May 30, 1974.

Rogers W. Kirven, Florence, S. C., for plaintiff Crawford.

Wylie H. Caldwell, Jr., Florence, S. C., for plaintiff McGee.

Jack L. Nettles, Florence, S. C., for defendant State Farm.

Wylie H. Caldwell, Jr., Florence, S. C., for defendant Powers.

Haigh Porter, Florence, S. C., for defendant Newton.

T. Kenneth Summerford, Florence, S. C., for defendant First Provident.

## FINDINGS OF FACT, CONCLUSIONS OF LAW and ORDER

CHAPMAN, District Judge.

These two actions arise out of a dispute concerning an insurance policy issued by State Farm Fire and Casualty Insurance Company (hereinafter State Farm) to Andrew J. McGee and Cornelia McGee (hereinafter McGees) covering a dwelling formerly owned by and occupied by the McGees. The McGees, Kenneth Ray Crawford, Don Newton and W. O. Powers are all citizens and residents of Florence County, South Carolina; State Farm is a corporation organized and existing under the laws of South Carolina.

On April 14, 1973 Kenneth Ray Crawford (hereinafter Crawford) filed an action in the Court of Common Pleas for Florence County, South Carolina, naming as defendants State Farm, Don Newton, First Provident Corporation and W. O. Powers (hereinafter referred to as Newton, First Provident and Powers). Crawford alleged he had become the owner of a home situated at 413 Williamson Road, Glendale Acres Subdivision, Florence, South Carolina (hereinafter 413 Williamson Road) by purchasing it from Powers for $2,500.00 and assuming monthly payments. That approximately one month after the purchase, a fire occurred, damaging the home and Crawford's personal property located therein. Craw-

ford contends that the home and personal property were covered at the time of the loss by policy number 40–571707 issued by State Farm, which was then paid up and in full force and effect. He further alleges that at the time the property was purchased, it was represented by and through all of the defendants that 413 Williamson Road was covered by the policy and that because of the negligence, recklessness and wilfullness of the defendants, he is entitled to actual and punitive damages.

State Farm answered Crawford's complaint and Powers answered and filed a cross-complaint against State Farm. The matter was then removed to this Court by State Farm where it became known as Civil Action No. 73–235.

On February 5, 1973, the McGees sued State Farm in the Florence County Court of Common Pleas, alleging that they had originally purchased policy number 40–571707 from State Farm and that because of State Farm's refusal to pay the loss under the policy, they are entitled to recover actual and punitive damages. State Farm answered that complaint, removed the action to this Court and filed a third party complaint against First Provident, Powers, Crawford and Newton, seeking judgment in an undetermined amount equal to any amount State Farm might have to pay the McGees or any of the third-party defendants on any cause of action brought by any of the third-party defendants against State Farm. This action became known in this court as Civil Action No. 73–332.

Newton and Crawford filed answers in Civil Action 73–332, while Powers answered, counterclaimed against State Farm and filed a cross-complaint against Newton and First Provident. First Provident answered the third-party complaint of State Farm, cross-complained against Crawford, counterclaimed against the cross-complainant Powers, answered and counterclaimed against the McGees and State Farm. Thereafter, all the parties filed their responsive pleadings and entered into discovery proceedings. Because of the insep-

arability of the issues in these two actions, they were consolidated for trial and came on to be heard by this Court, without a jury at Florence County, South Carolina on May 9, 1974. During the course of the trial, involuntary dismissals were granted in favor of First Provident with respect to the claim against it by Crawford; in favor of Newton on the claim against him by Powers and in favor of Newton on the claim against him by State Farm. After hearing testimony spanning several days, studying the exhibits and reading a deposition introduced into evidence, the Court has weighed all the evidence, studied the applicable law and in compliance with Rule 52 of the Federal Rules of Civil Procedure makes the following:

## FINDINGS OF FACT

1. On February 14, 1969 Andrew J. McGee, III and Cornelia McGee bought the lot and house at 413 Williamson Road, giving a note and mortgage secured by the property to First Provident in the sum of $17,000.00 with interest at 7½%, payable in monthly installments of $119.00. The McGees occupied this home.

2. First Provident assigned the mortgage given it by the McGees to the Federal National Mortgage Association (hereinafter FNMA) on May 7, 1969, the assignment being recorded on June 18, 1969.

3. On February 12, 1970, State Farm issued policy number 40–571707 covering 413 Williamson Road, with an expiration date of February 12, 1971. The named insureds under said policy are shown as Andrew J. and Cornelia McGee. The policy is designated as a homeowner "Form 3" policy, showing First Provident as the mortgagee. The policy provided insurance against all direct loss by fire, lightning and other perils insured against in the policy and contained a provision that the policy is not assignable without the written consent of State Farm. The policy also contained a condition that State Farm shall not be liable for loss occurring "while the hazard is increased by any means within the control or knowledge of the insured" and the stan-

dard "mortgagee" clause which provides that:

"12. Mortgage Clause—Coverage A only: (This entire clause is void unless name of mortgagee (or trustee) is inserted in the Declarations): Loss, if any, under this policy shall be payable to the mortgagee (or trustee), named on the first page of this policy, as interest may appear, under all present or future mortgages upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee), in order of precedence of said mortgages, and this insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

Provided also that the mortgagee (or trustee) shall notify this Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void.

This Company reserves the right to cancel this policy at any time as provided by its terms but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this Company shall have the right, on like notice to cancel this agreement.

Whenever this Company shall pay the mortgagee (or trustee) any sum for loss under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt; or may at its option pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim."

The policy also contained a condition that the insured must file a sworn proof of loss within 60 days after the loss. One of the perils insured against under the policy was direct loss of unscheduled personal property. Premiums for the policy were collected on a monthly basis with the mortgage payments by First Provident, held in escrow and paid over to State Farm annually.

4. State Farm issued an endorsement to policy number 40–571707 on March 13, 1970 showing Federal National Mortgage Association in care of First Provident as loss payee under the mortgagee clause.

5. During the fall of 1970 the McGees began to fall behind in their monthly mortgage payments and as a result First Provident wrote Mark W. Buyck, Jr., an attorney in Florence, directing Mr. Buyck to institute foreclosure proceedings on 413 Williamson Road. First Provident advised that it would not be necessary for him to correspond with FNMA but that he should keep First Provident advised of the status of the proceedings. On October 26, 1970 Mr. Buyck filed a lis pendens on the property and commenced the foreclosure.

6. Within a few days after institution of the foreclosure action, Mr. McGee discussed with Powers the fact that he was behind in his payments and would like to dispose of the house. Powers had loaned McGee money from time to time and the two reached an agreement whereby Powers would can-

cel a note already given to him by McGee and would assume monthly payments on the house. Powers contacted Buyck and made arrangements to assume the McGee loan. Buyck received a document entitled "Loan Transfer Requirements" from First Provident directing him to forward to First Provident a certified copy of the deed of transfer, a $35.00 transfer fee, a $10.00 service charge required if the present insurance policy was to be cancelled and a new policy substituted, delinquent payments and a certificate of assumption. Buyck prepared the necessary documents transferring title from McGee to Powers, who took title to the property by deed dated November 9, 1970. Mr. Buyck recorded the original deed at the Florence County Court House and on November 13, 1970 returned it to Powers.

7. On November 10, 1970, Mr. Buyck forwarded the assumption documents to Mrs. Betty McLamb at First Provident. The letter, which was received by First Provident, makes no mention of the certified copy of the deed. Upon receiving the letter at First Provident and finding that it did not contain the deed, Mrs. Lorene Goodman, manager of the mortgage servicing department, contacted a secretary at Mr. Buyck's office and inquired about the deed, and was advised that the deed was at the courthouse being recorded, and a copy would be mailed to First Provident when recordation was completed. This deed never came and Mrs. Goodman again called Mr. Buyck's office and was advised that the deed had been sent to Powers and First Provident would have to contact Powers to get the deed. Mrs. Goodman called Powers' office on two occasions to ask about the deed. Powers, being a regular customer of First Provident, was in the First Provident office on frequent occasions and was asked about the deed several times by both Mrs. Goodman and Faye Gerald, between November 1970 and January 1971.

8. At some time during November of 1970, Powers contacted Newton, a successful Florence realtor and asked him to assist him in selling the house on Williamson Road. The McGees moved out of the home approximately one week after the assumption by Powers being the middle of November. Virginia Overby, a saleslady associated with Newton, showed the home to Kenneth Ray Crawford. A price was agreed upon for the house and on approximately December 1, 1970 Crawford and his family occupied the house. On December 8, 1970 a "contract to purchase" was executed between Powers and Crawford under the terms of which Crawford was to pay a total purchase price of $19,243.63. The amount of equity included in the purchase price, $2,500.00 was to be paid in the amount of $500.00 per year beginning the first day of June 1971, with $500.00 paid at the signing of the contract. Crawford was to assume mortgage payments on the house and make such payments to Powers who would in turn pay First Provident. Upon receiving the total equity payment, Powers would deliver to Crawford a fee simple title to the property subject to the mortgage held by FNMA. The contract was executed at Newton's office and makes no mention of insurance. At the time of this transaction Newton had no casualty insurance license and was not in that business. A salesman employed by Newton, one Bill Yonce, sold Crawford a term life insurance policy, however casualty insurance was mentioned only when either Powers or Newton said that payment included principal, interest, taxes and insurance. Crawford drew the conclusion that all his insurance needs were taken care of and made no further inquiry concerning fire insurance. Crawford is a uniform rental salesman with one year of college and although this was his first involvement in purchasing a home, he is of sufficient intelligence to be able to protect himself in matters such as this and had previously owned a mobile home, which was financed and paid in monthly installments including taxes and insurance. Moreover, there is absolutely no evidence of negligence, fraud or misrepresentation by Newton or any of his associates or Powers.

9. There was testimony that the dwelling at 413 Williamson Road was in bad repair and quite dirty at the time McGee and his wife vacated it, however the house

**728**

remained vacant no longer than 10 days to two weeks and was situated in a heavily populated neighborhood. The Court finds that there was no increase in the hazard or risk brought about by the change in ownership, or vacancy for such a short time.

10. On January 6, 1971, the home at 413 Williamson Road caught fire while Crawford's wife was preparing supper. The dwelling was extensively damaged and Crawford suffered a substantial loss of personal property.

11. On the day following the fire, Crawford attempted to contact Newton, but was unable to do so. On the same date, January 7, 1971, Powers learned of the fire and called First Provident to notify it. On the same date, the State Farm agent, James Lawrence, learned of the fire by way of a call from First Provident. On the day before the fire, someone at First Provident again called Powers and requested that he furnish a certified copy of the deed, which he did on January 8, 1971.

12. The Court finds that Powers is a knowledgeable and experienced dealer in real estate and construction matters. He was in and out of the First Provident office on frequent occasions and had many opportunities to furnish the certified copy of the deed to First Provident as requested. The Court finds that Powers' failure to provide the deed until January 8, 1971 was unreasonable and negligent under the circumstances. Powers also knew of First Provident's requirement that it must receive a certified copy of the deed showing the date and place of recording before it transferred the loan to a new owner or assumptor.

13. The Court further finds that the action of First Provident in notifying State Farm of the change in ownership of 413 Williamson Road on January 8, 1971 was quite reasonable under the circumstances. First Provident had been attempting to secure a certified copy of the deed from Powers since early November 1970 without success. The Court will not permit First Provident to suffer a loss where it has done all that could reasonably be expected

of it. It's rule requiring an assumption to be accompanied by a certified copy of the deed is reasonable made to protect itself, it's customers and lenders from confusion.

14. Approximately 10 days after the fire, Crawford went to the State Farm office where he was advised that one "Stuff" Goodwyn, a local independent insurance adjuster had been employed to investigate the fire. On the same date, Crawford stopped in at the First Provident office to advise of his interest in the house and inquire as to fire insurance.

15. After the fire, Crawford made one house payment on January 11, 1971. Thereafter, Powers made monthly payments through and including May 1971. First Provident has called on Powers for no further payments on the mortgage. The McGees have been advised by the attorney for First Provident by letter of February 6, 1973 that First Provident looks to them for the mortgage payments but has taken no action to collect. First Provident has made no further demand on Crawford for any monthly mortgage payments.

16. State Farm mailed a notice of premium due on policy number 40–057–1707 which was paid by First Provident on February 17, 1971 in the sum of $104.00. This notice recited that the premium was due on February 12, 1971 and would extend coverage until February 12, 1972. This premium was excepted by State Farm after it knew of the change of ownership, occupancy and the fire.

17. At some point in late February 1971, Crawford was advised by Goodwyn that State Farm would not pay his loss. Crawford thereupon sought the advice of counsel. On February 25, 1971, State Farm directed a letter to First Provident advising that policy number 40571707, covering 413 Williamson Road was being cancelled effective March 10, 1971. No amount of the $104.00 premium previously paid was then refunded, however on April 8, 1971 First Provident received a refund of premium in the amount of $97.00.

18. Pursuant to a request by First Provident, State Farm furnished a blank proof

of loss form to First Provident which was completed, executed, sworn to and filed by Warren L. Jackson, Treasurer of First Provident on April 27, 1971. The Court finds that the McGees never filed a sworn proof of loss. On April 14, 1971 Crawford instituted his action in state court. First Provident purchased the mortgage from FNMA on May 26, 1972.

19. Throughout the course of events out of which these actions arose a flood of correspondence passed between the parties, much of which has been introduced into evidence. Many other documents have also been introduced into evidence, however the Court has referred only to those which it feels have probative value in this matter.

20. Powers prepared a breakdown of the cost of repairing the residence at 413 Williamson Road on January 25, 1971. The total cost was computed to be $9,912.09. The parties have stipulated that such a figure is accurate and reasonable as of the time of the fire.

## CONCLUSIONS OF LAW

A. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332 and § 1446.

■ B. With respect to Crawford's claim against State Farm, the Court has found that the McGees were the named insureds under the policy and that Crawford had not taken title at the time of the fire. The policy provision that it could not be assigned except with the written consent of State Farm is quite clear and unambiguous and must be so interpreted. See *Blanton v. Calvert Ins. Co.,* 247 S.C. 148, 146 S.E.2d 156 (1966). There was absolutely no evidence of fraud or misrepresentation by State Farm at the time of the fire, State Farm had no idea who Crawford was and had not accepted him as an insured. Thus there is no basis for circumventing this policy provision and the harsh but inevitable result is that Crawford has no basis for recovery against State Farm.

■■ C. The Court has also found that there was no evidence of fraud or over-reaching on the part of Newton or Powers with respect to Crawford. Thus Crawford may not recover against either of these parties. If Crawford's cause of action against these parties be construed to be one for negligence, the Court concludes that there was no legal duty on either Powers or Newton to advise Crawford of his insurance needs. Where the only relation between the parties is contractual, liability must arise out of some positive duty which the law imposes because of the relationship or because of the negligent manner in which some act provided for in the contract is performed. *Felder v. Great American Ins. Co.,* 260 F.Supp. 575 (D.C.S.C.1966). In the present case there was no such relationship between Crawford and either Newton or Powers and the contract made no provision for insurance, therefore Crawford has no claim against either of these parties.

■ D. In *Reid v. Hardware Mutual Ins. Co.,* 252 S.C. 339, 166 S.E.2d 317 (1969) the Court held that an insured under a fire policy who transferred the property in consideration of an assumption of an mortgage maintains an insurable interest in the property and may recover the balance due on the mortgage where the property is destroyed after the mortgage assumption. The Court has found that there was no increase in the hazard or risk created by the mortgage assumption, thus if the McGees complied with all conditions of the policy they would be entitled to recover from State Farm under the *Reid* case. The McGees failed, however, to file a proof of loss. Under South Carolina law, compliance with a fire insurance policy requirement regarding proof of loss is essential to recovery, though substantial compliance may suffice. *Travelers Ins. Co. v. Frady,* 180 F.2d 339 (4th Cir. 1950). In the present case there was no compliance whatsoever and the McGees have no claim against State Farm on the policy. Mrs. McGee refused to sign the proof of loss when it was presented to her some months after the fire.

■ E. In the Powers claim against State Farm it is quite clear that he was not a named insured under the policy and thus

may not recover. State Farm did not know Powers owned the property and the policy had not been assigned. Moreover, the Court has found that First Provident acted quite reasonably in notifying State Farm of the transfer in ownership on January 8, 1971 and that Powers acted negligently in waiting for such a long period of time before furnishing a copy of the deed to First Provident. There is no basis on which Powers can recover against First Provident.

F. State Farm vigorously contends that First Provident may not recover from it under the mortgagee clauses because of its failure to notify State Farm of the change in ownership of which it had actual notice as required by the terms of the policy. Under normal circumstances such a policy provision must be complied with, however in the instant case State Farm accepted a policy premium payment over a month after the fire and did not return any part of the premium until approximately three months after the fire. An insurance company may waive or be estopped to rely on a condition in a fire insurance policy relating to a change in possession. 45 *C.J.S. Insurance* § 674 (1946) citing *Bankers Fire and Marine Ins. Co. v. Draper*, 242 Ala. 601, 7 So.2d 299. It is a settled principle of insurance law that the acceptance of premiums by an insurer with knowledge of a breach of condition ordinarily constitutes a waiver or estoppel. 45 *C.J.S. Insurance* § 716 (1946). In the present case, State Farm accepted a premium paid by First Provident more than a month after State Farm's agent and adjuster had knowledge of the change in ownership and possession of the home. State Farm also failed to return any portion of the premium for the year in which the loss occurred, which is entirely inconsistent with its position that the policy was void at the date of transfer. It should also be pointed out that State Farm accepted and retained a portion of the premium for the year following the year of the loss. Such action clearly constitutes a waiver of or estoppel to rely upon the condition in the policy requiring First Provident to notify State Farm of any change in ownership of the property. First Provident gave reasonable notice to State Farm as soon as it was sure that the title had passed to Powers. First Provident is entitled to recover against State Farm for the amount of the fire loss to the home at 413 Williamson Road.

G. All other claims, counterclaims and cross claims involved in these actions are dependent upon the claims hereinabove decided by the Court. The Court will not disturb the rights and liabilities of the parties hereto under the note and mortgage covering the property involved herein.

IT IS, THEREFORE, ORDERED that:

(1) First Provident Corporation have judgment against State Farm Fire and Casualty Insurance Company in the sum of $9,912.09.

(2) All other claims, counterclaims and cross claims involved in these actions be and the same are hereby dismissed.

(3) The rights, liabilities and obligations of the parties to these two actions in connection with the note and mortgage covering the property at 413 Williamson Road shall remain undisturbed.

AND IT IS SO ORDERED.